Opinion filed June 28, 2019



# In The

# Eleventh Court of Appeals

_____

## No. 11-17-00080-CV

_____

## BITTER CREEK WATER SUPPLY CORPORATION, Appellant

## V.

## WESLEY SIMS, Appellee

**On Appeal from the 32nd District Court**
**Nolan County, Texas**
**Trial Court Cause No. 19,506**

## MEMORANDUM OPINION

This is an appeal in a suit involving a forty-year contract for the sale of water. After twenty-seven years, each party alleged that the other breached the contract with respect to the price owed under the contract. The trial court resolved a portion of the suit by summary judgment, and it resolved the remaining issues in a bench trial. We affirm in part, and we reverse and remand the remaining matters.

### Background Facts

On April 24, 1986, Bitter Creek Water Supply Corporation signed a written contract agreeing to purchase water pumped from Wesley Sims's land for a period

of forty years. Bitter Creek agreed to buy at least fifty million gallons of water from Sims each year, and Sims agreed not to sell water to any buyer other than Bitter Creek without Bitter Creek's express written permission. Bitter Creek had been purchasing water from the City of Sweetwater since 1970. The parties tied the price that Bitter Creek was to pay Sims for the water to the price that Bitter Creek paid to the City for water. Specifically, the contract's price provision stated as follows:

> As purchase price for such water, SIMS and BITTERCREEK agree that BITTERCREEK will pay to SIMS one-half of whatever the purchase price BITTERCREEK is currently paying to the CITY OF SWEETWATER for the purchase of water from the CITY OF SWEETWATER. Both parties recognize that this price may vary according to the price BITTERCREEK must pay to the CITY OF SWEETWATER. The parties agree however, that in no event, shall such price be lower than .70 per 1,000 gallons of water.

In April 1986, Bitter Creek was paying the City $1.40 per 1,000 gallons of water.

Bitter Creek's contract to purchase water from the City expired on October 1, 2013. At that time, Bitter Creek was paying the City $5.68 per 1,000 gallons of water, requiring Bitter Creek to pay Sims $2.84 per 1,000 gallons of water. Bitter Creek and the City were unable to reach an agreement on a new contract, and Bitter Creek has not purchased any water from the City since October 1, 2013.

Bitter Creek proposed to Sims that the contract be amended effective December 1, 2013, to require Bitter Creek to pay a flat rate of $1.50 per 1,000 gallons of water. Sims refused to amend the contract and requested that Bitter Creek continue to perform under the contract. In December 2013, Bitter Creek began tendering payment to Sims at a rate of $0.70 per 1,000 gallons. Sims rejected the payments, and informed Bitter Creek that he would not allow Bitter Creek to enter his property or pump any water from his wells.

Sims sued Bitter Creek for breach of the contract. Bitter Creek answered, asserting affirmative defenses of failure to mitigate damages, repudiation and

2

material breach of the contract by Sims, impossibility of performance, and waiver. Bitter Creek also filed a counterclaim for breach of contract.

Both Sims and Bitter Creek filed traditional motions for summary judgment on the competing breach of contract claims, and Sims filed a no-evidence motion for summary judgment on Bitter Creek's breach of contract claim. Both parties requested that the trial court interpret the price provision in the contract.

Sims filed a combined motion for traditional and no-evidence summary judgment on the competing breach of contract claims. As to his traditional motion for summary judgment, Sims specifically requested the trial court to determine that the parties agreed that Bitter Creek would pay Sims one-half of the amount charged by the City for water sold to other customers. Alternatively, Sims requested that the trial court determine that the parties agreed to a reasonable price for the water, with the price to be determined by the trier of fact.

Bitter Creek responded to Sims's motion and incorporated that response into a countermotion for traditional summary judgment. Bitter Creek sought a ruling that the contract terminated in October 2013 or, alternatively, that when its contract with the City expired, the price of water under the contract was fixed at $0.70 per 1,000 gallons. Bitter Creek also requested that the trial court rule that Bitter Creek did not breach the contract and that Sims breached the contract.

Sims also filed a combined motion for traditional and no-evidence summary judgment on Bitter Creek's affirmative defenses. Bitter Creek responded to Sims's motion and incorporated that response into a countermotion for traditional summary judgment on its affirmative defenses of repudiation and failure to mitigate.

The trial court granted Sims's motion for summary judgment without specifying the basis of its ruling, denied Bitter Creek's motion for summary judgment, and "found" that the contract price for the water was $2.84 per 1,000 gallons from November 1, 2013, through the date of the order and one-half of the

3

current price that the City was charging its commercial customers for the remainder of the contract.

After a bench trial on the issues of damages and attorney's fees, the trial court set the price Bitter Creek was required to pay for water under the contract, found that Bitter Creek breached the contract by failing to pay the correct price, and awarded Sims $462,282.13 on his breach of contract claim and $184,912.85 for attorney's fees.

*Analysis*

In its first issue on appeal, Bitter Creek contends that the trial court improperly construed the contract's price provision and erred by granting summary judgment in favor of Sims and against Bitter Creek on the competing breach of contract claims. In two additional issues, Bitter Creek argues that the trial court erred by granting summary judgment in Sims's favor on Bitter Creek's affirmative defenses and by awarding attorney's fees to Sims in the amount of $184,912.85. As set out below, we affirm the trial court's grant of summary judgment on Bitter Creek's affirmative defense of waiver. We reverse the trial court's judgment in all other respects and remand this cause to the trial court.

We review a trial court's summary judgment de novo. *KMS Retail Rowlett, LP v. City of Rowlett*, No. 17-0850, 2019 WL 2147205, at *3 (Tex. May 17, 2019). In reviewing both traditional and no-evidence summary judgments, we consider the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the movant. *Id.* We credit evidence favorable to the nonmovant, if reasonable jurors could do so, and disregard contrary evidence unless reasonable jurors could not. *Samson Expl., LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 766, 774 (Tex. 2017); *Boerjan v. Rodriguez*, 436 S.W.3d 307, 311–12 (Tex. 2014) (per curiam).

4

To prevail on a traditional motion for summary judgment, the movant must show that there is no genuine issue of material fact as to at least one essential element of the nonmovant's cause of action and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *KMS Retail Rowlett*, 2019 WL 2147205, at *3. To defeat a no-evidence motion for summary judgment, the nonmovant must produce at least a scintilla of evidence raising a genuine issue of fact as to each challenged element of a claim or defense. TEX. R. CIV. P. 166a(i); *KMS Retail Rowlett*, 2019 WL 2147205, at *3. "Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact." *KMS Retail Rowlett*, 2019 WL 2147205, at *3.

When both parties move for summary judgment, and one is granted and the other denied, we must review all the summary judgment evidence, determine all issues presented, and render the judgment that the trial court should have rendered. *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017).

*Price Provision in Contract*

In its first issue, Bitter Creek asserts that the trial court improperly construed the contract's price provision and, therefore, erred by granting Sims's motion for summary judgment and denying Bitter Creek's motion for summary judgment on the competing breach of contract claims.

Both Sims and Bitter Creek moved for traditional summary judgment on the competing breach of contract claims, and Sims moved for no-evidence summary judgment on Bitter Creek's breach of contract claim. The motions for traditional summary judgment were based on each party's interpretation of the price provision in the contract. In his no-evidence motion for summary judgment, Sims asserted that there was no evidence that (1) Bitter Creek performed, tendered performance of, or was excused from performing its contractual obligations; (2) Sims breached the contract; or (3) Sims's breach caused Bitter Creek injury.

Generally, when parties move for summary judgment on both traditional and no-evidence grounds, we first consider the no-evidence motion for summary judgment. *Id.* If the nonmovant fails to produce at least a scintilla of evidence on any claim, we need not address the traditional motion to the extent it addresses the same claim. *Id.* However, in this case, whether Bitter Creek produced more than a scintilla of evidence that it performed its contractual obligations, that Sims breached the contract, and that Sims's breach caused Bitter Creek injury are dependent on whether the parties' contractual obligations were established as a matter of law. Accordingly, we will consider the competing traditional motions for summary judgment first. *See Lotito v. Knife River Corp.-S.*, 391 S.W.3d 226, 227 n.2 (Tex. App.—Waco 2012, no pet.) (considering traditional motion for summary judgment first because no-evidence motion for summary judgment was "premised on a determination that the traditional motion sought to defeat as a matter of law").

In his traditional motion for summary judgment, Sims asserted that (1) the contract was for the sale of goods and subject to the Uniform Commercial Code (the UCC), as codified in Chapter 2 of the Texas Business and Commerce Code, *see* TEX. BUS. & COM. CODE ANN. §§ 2.101–.725 (West 2009); (2) the parties agreed to a reasonable price for the water that was fixed by the terms of an agreed market or other standard, i.e. the price Bitter Creek paid to the City for water; (3) Bitter Creek caused the purchase price in the contract to fail when it stopped buying water from the City; (4) pursuant to Section 2.305(c) of the Business and Commerce Code, Sims had the option of either treating the contract as cancelled or fixing a reasonable price for the sale of the water; and (5) Sims exercised the second option and fixed the price at $2.84 per 1,000 gallons of water. Sims also argued that the law implies a reasonable price for the water because the parties clearly intended to be bound and because there is a reasonably certain basis for giving an appropriate remedy.

In Bitter Creek's response to Sims's motion, which it incorporated into its traditional motion for summary judgment, Bitter Creek contended that the contract terminated as a matter of law when Bitter Creek stopped buying water from the City because there was no longer a meeting of minds as to the price for water. Bitter Creek specifically asserted that (1) the open price provisions of the UCC do not apply when the parties intended an express agreement based on price, rather than leaving the price open, but discover, based on subsequent events, that they did not have an agreement and (2) even if the UCC applied to the contract, there was no agreement as to price because the parties intended to be bound by a fixed or agreed price and the price was no longer fixed or agreed. Alternatively, Bitter Creek argued that the minimum price provision in the contract is a "notwithstanding clause" and that the termination of its agreement with the City triggered that clause, setting the contract price at the price of $0.70 per 1,000 gallons.

When the meaning of a contract is disputed, our primary objective "is to give effect to the written expression of the parties' intent." *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, No. 18-0186, 2019 WL 2256658, at *4 (Tex. May 24, 2019). "Objective manifestations of intent control, not 'what one side or the other alleges they intended to say but did not.'" *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 763–64 (Tex. 2018) (footnote omitted) (quoting *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 127 (Tex. 2010)). We, therefore, "presume parties intend what the words of their contract say" and interpret the language of the contract according to its "plain, ordinary, and generally accepted meaning" unless the contract directs otherwise. *Id.* at 764 (first quoting *Gilbert Tex. Constr.*, 327 S.W.3d at 126; and then quoting *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)).

Because "[c]ontext is important," we consider the entire writing in an effort to harmonize and give effect to all of the provisions of the contract so that none are

7

rendered meaningless. *Exxon Mobil Corp. v. Ins. Co. of State*, 568 S.W.3d 650, 657 (Tex. 2019). No one phrase, sentence, or section of the agreement should be isolated from its setting and considered apart from the other contractual provisions. *Pathfinder Oil & Gas*, 2019 WL 2256658, at \*5.

We may also consider the objectively determinable facts and circumstances surrounding a contract's execution to aid in our interpretation of the contract's language. *URI*, 543 S.W.3d at 757–58, 764; *see also Frost Nat'l Bank v. L&F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (per curiam) ("We construe contracts 'from a utilitarian standpoint bearing in mind the particular business activity sought to be served' and 'will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive.'" (quoting *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987))). But the surrounding facts and circumstances cannot be used to "augment, alter, or contradict the terms of an unambiguous contract." *URI*, 543 S.W.3d at 758; *see also Pathfinder Oil & Gas*, 2019 WL 2256658, at \*5 ("Circumstantial evidence is merely 'an aid in the construction of the contract's language' and may only be used to give the contract a meaning consistent with that to which its terms are reasonably susceptible." (quoting *URI*, 543 S.W.3d at 765)). A court may neither rewrite the parties' contract nor add to or subtract from the contract's language. *URI*, 543 S.W.3d at 770 (citing *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 242 (Tex. 2016)).

A contract is unambiguous if it is worded so that it can be given a certain or definite meaning. *Id.* at 765. However, a contract is ambiguous when its provisions are susceptible to two or more reasonable constructions. *Int'l Bus. Machs. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 232 (Tex. 2019).

A contract ambiguity can be patent or latent. *URI*, 543 S.W.3d at 765. A patent ambiguity is evident on the face of the contract. *Id.* A latent ambiguity occurs when a contract, unambiguous on its face, is applied to the subject matter with which

it deals and an ambiguity appears by reason of a collateral matter. *Id.* Extrinsic evidence may not create a latent ambiguity. *Id.* Rather, the ambiguity must become apparent when the contract is read in the context of the surrounding circumstances. *Id.* We may not "rely on evidence of surrounding circumstances to make the language say what it unambiguously does not say." *Id.* at 767 (quoting *First Bank v. Brumitt*, 519 S.W.3d 95, 110 (Tex. 2017)).

"A contract is not ambiguous merely because the parties disagree about its meaning and may be ambiguous even though the parties agree it is not." *Id.* at 763. When an agreement is ambiguous, the parties' intent becomes a fact issue. *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 681 (Tex. 2017). The presence of an ambiguity and the interpretation of an unambiguous contract are questions of law. *URI*, 543 S.W.3d at 763.

In this case, the price provision in the contract provided that (1) Bitter Creek is required to pay Sims "one-half of whatever the purchase price" that Bitter Creek "is currently paying" to the City for the purchase of water, (2) the parties recognized that this price might vary based on the price that Bitter Creek "must pay" the City, and (3) "in no event" would the price be lower than $0.70 per 1,000 gallons of water. The facts and circumstances existing at the time that the contract was signed were that Bitter Creek had purchased water from the City beginning in at least 1970 and, in December 1983, had signed a contract with the City to continue that relationship. In 1986, Sims and Bitter Creek agreed that Bitter Creek would purchase water from Sims for forty years and tied the price that Bitter Creek would pay Sims to the price that Bitter Creek was paying or must pay to the City.

Construing the entire price provision, one reasonable interpretation is that the parties intended that the price that Bitter Creek would pay for the water would always be based on the City's rate and would vary with the rate that Bitter Creek "must pay" the City, but Sims was protected in the event that the City's charge fell

9

below $1.40 per 1,000 gallons, which was the price that Bitter Creek was paying the City at the time the contract was executed. The use of the term "must pay," which does not require that Bitter Creek is actually paying that amount, makes Sims's proposed reading of the price provision—that the contract price always remain tied to the price charged by the City—a reasonable interpretation of the contract. On the other hand, Bitter Creek's interpretation of the price provision—that the parties intended for the minimum price to apply if Bitter Creek paid the City nothing—is also reasonable. Because the price provision of the contract is subject to two reasonable interpretations, it is ambiguous and creates a fact issue on the parties' intent. *See Cmty. Health Sys. Prof'l Servs. Corp.*, 525 S.W.3d at 681. "The trier of fact must resolve the ambiguity by determining the true intent of the parties." *Coker v. Coker*, 650 S.W.2d 391, 394–95 (Tex. 1983); *see Lenape Res. Corp. v. Tennessee Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex. 1996) (if a contract is ambiguous, "its meaning must be resolved by a finder of fact").

Because there is a genuine issue of material fact regarding the parties' intent as to the price that Bitter Creek was required to pay under the contract if it stopped buying water from the City, the trial court erred by granting Sims's motions for traditional and no-evidence summary judgment on the competing breach of contract claims, but properly denied Bitter Creek's traditional motion for summary judgment on those claims. Therefore, we sustain Bitter Creek's first issue to the extent that Bitter Creek complains that the trial court erred by granting summary judgment in favor of Sims on Sims's and Bitter Creek's breach of contract claims, but we overrule Bitter Creek's first issue to the extent that Bitter Creek complains that the trial court erred by denying summary judgment in favor of Bitter Creek on those claims.

*Affirmative Defenses*

Bitter Creek asserts in its second issue that the trial court erred by granting Sims's motion for summary judgment on Bitter Creek's affirmative defenses of repudiation, material breach, impossibility of performance, and failure to mitigate damages and denying Bitter Creek's traditional motion for summary judgment on its affirmative defenses of repudiation and failure to mitigate damages.

Sims filed a combined traditional and no-evidence motion for summary judgment on Bitter Creek's affirmative defenses of waiver, impossibility of performance, material breach, repudiation, and failure to mitigate. Bitter Creek responded to Sims's motion and incorporated that response into a traditional motion for summary judgment on Bitter Creek's affirmative defenses of repudiation and failure to mitigate. The trial court granted summary judgment in favor of Sims on all of Bitter Creek's affirmative defenses without specifying the basis for the ruling.

In its brief, Bitter Creek does not challenge the trial court's granting of Sims's no-evidence and traditional motions for summary judgment on Bitter Creek's affirmative defense of waiver. Accordingly, we affirm the trial court's summary judgment as to that affirmative defense.

Bitter Creek first argues that the trial court erred by granting Sims's no-evidence motion for summary judgment on the affirmative defenses of impossibility of performance, material breach, and repudiation because the motion was conclusory, not sufficiently specific, did not specify the elements of the claims being attacked, and only generally attacked Bitter Creek's factual theories.

After sufficient time for discovery has passed, a party may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which the adverse party would have the burden of proof at trial. TEX. R. CIV. P. 166a(i). In a no-evidence motion for summary judgment, the movant must specifically state the elements of the claim or defense for which there

11

is no evidence. *Id.*; *Jose Fuentes Co. v. Alfaro*, 418 S.W.3d 280, 283 (Tex. App.—Dallas 2013, pet. denied). A no-evidence motion for summary judgment that is general and conclusory and does not specifically challenge a particular element is legally insufficient as a matter of law. *Alfaro*, 418 S.W.3d at 283.

Sims's no-evidence motion for summary judgment on the affirmative defenses of material breach and repudiation read in its entirety:

> Bitter Creek Claims [sic] that it is not liable because Sims materially breached and repudiated the Contract by not producing 50 million gallons of water in 2012, by refusing to accept payment for 50 million gallons in 2013, by refusing to accept payments made in 2014, and by orally revoking Bitter Creek's right of entry on Sims's land.

Sims did not identify the elements of the defenses of material breach and repudiation and did not specifically identify any element of a defense for which there was no evidence. Therefore, Sims's no-evidence motion was legally insufficient as to Bitter Creek's affirmative defenses of material breach and repudiation. *See id.*

Sims's no-evidence motion for summary judgment on Bitter Creek's affirmative defense of impossibility of performance stated:

> Bitter Creek also alleges that their duty to perform under the contract is excused by impossibility of performance by Sims in 2012. Sims denies that he was ever unable to provide the 50 million gallons of water per year. *See* Exhibit 1. Plaintiff is entitled to a no-evidence summary judgment on Defendant's affirmative defense of impossibility of performance because Bitter Creek has failed to produce any evidence that Sims was unwilling or unable to meet the demands of Bitter Creek in 2012.

In its response to Sims's motion, Bitter Creek abandoned the allegation that Sims could not provide sufficient water as a factual basis for its impossibility-of-performance defense.

Bitter Creek, however, also pleaded impossibility of performance based on (1) Sims's refusal to accept Bitter Creek's tendered payment for the water and

12

(2) Sims's revocation of Bitter Creek's right of entry onto Sims's land to access the wells. Sims did not challenge these factual theories in the no-evidence motion for summary judgment and did not identify any element of the affirmative defense of impossibility of performance for which there was no evidence. Accordingly, Sims's no-evidence motion for summary judgment was legally insufficient as to Bitter Creek's affirmative defense of impossibility of performance. *See id.*

We conclude that Sims's no-evidence motion for summary judgment on Bitter Creek's affirmative defenses of impossibility of performance, material breach, and repudiation is legally insufficient and will not support the trial court's ruling.

Sims also moved for traditional summary judgment on Bitter Creek's affirmative defenses of impossibility of performance, material breach, and repudiation on the ground that he was entitled to suspend performance under the contract because he did not receive adequate assurance of due performance from Bitter Creek pursuant to Section 2.609(a) of the Business and Commerce Code. Bitter Creek filed a competing traditional motion for summary judgment, which simply incorporated its response to Sims's motion, and requested that the trial court determine that Sims repudiated the contract.

Section 2.609(a) of the Texas Business and Commerce Code states:

> A contract for sale imposes an obligation on each party that the other's expectation of receiving due performance will not be impaired. When reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance and until he receives such assurance may if commercially reasonable suspend any performance for which he has not already received the agreed return.

BUS. & COM. § 2.609(a). Sims, as the movant for traditional summary judgment, had the burden to conclusively establish that he was entitled to summary judgment as a matter of law. Sims, however, failed to direct the trial court to any summary judgment evidence establishing that he made a written demand for adequate

13

assurance under Section 2.609(a). Therefore, Sims failed to conclusively establish that he was entitled to suspend performance on the contract or that Bitter Creek's affirmative defenses of repudiation, material breach, and impossibility of performance were barred as a matter of law.

As to Bitter Creek's traditional motion for summary judgment asserting that Sims repudiated the contract as a matter of law, we have already concluded that there is an issue of fact on the parties' intent regarding the impact on the price provision in the contract in the event Bitter Creek no longer purchased water from the City. Further, there is summary judgment evidence that Sims was willing to proceed with the contract based on Bitter Creek paying one-half of what the City charged other customers. Accordingly, Bitter Creek did not conclusively establish that Sims repudiated the contract.

We conclude that the trial court erred by granting Sims's no-evidence and traditional motion for summary judgment on Bitter Creek's affirmative defenses of repudiation, material breach, and impossibility of performance, but properly denied Bitter Creek's traditional motion for summary judgment on its affirmative defense of repudiation.

Bitter Creek also pleaded that Sims failed to mitigate his damages by refusing to accept the payments tendered by Bitter Creek. Sims moved for a no-evidence summary judgment on this affirmative defense, asserting that (1) there was no evidence that he could have minimized damages but failed to do so and (2) there was no evidence of the amount by which the damages were increased by any failure to mitigate. Sims also moved for a traditional summary judgment on this affirmative defense on grounds that (1) he would have surrendered his right to insist on the proper purchase amount under the contract if he had accepted the payment tendered by Bitter Creek and (2) the contract specifically prohibited him from selling the water to any source other than Bitter Creek.

In its traditional motion for summary judgment, Bitter Creek requested that, if the trial court determined that Bitter Creek breached the contract, it also determine that Sims failed to mitigate damages. Bitter Creek offered summary judgment evidence that Sims could have sold the water to another customer for $1.00 per 1,000 gallons.

"The mitigation-of-damages rule prevents a party from recovering damages that result from a breach of contract that the non-breaching party could avoid by reasonable efforts." *Turner v. NJN Cotton Co.*, 485 S.W.3d 513, 523 (Tex. App.—Eastland 2015, pet. denied). Here, there are genuine issues of material fact regarding which party, if either, breached the contract. This issue of fact impacts Sims's arguments that Bitter Creek failed to pay the proper amount under that contract or that he was contractually prohibited from selling the water to anyone other than Bitter Creek. There is also summary judgment evidence that Sims could have sold the water to a third party for $1.00 for 1,000 gallons, which is at least a scintilla of evidence that, if Sims suffered any damages, he could have mitigated those damages in the amount of $0.30 per 1,000 gallons. On this record, we conclude that the trial court erred by granting either Sims's traditional or no-evidence motion for summary judgment.

Because Bitter Creek was seeking traditional summary judgment on its affirmative defense, it was required to conclusively establish each element of that defense. *See Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). In its motion, however, Bitter Creek simply incorporated the arguments that it made in its response to Sims's motion for summary judgment. Bitter Creek's only argument in its response was that, if it breached the contract, Sims was excused from the contractual prohibition on selling water to third parties. We cannot conclude that this argument conclusively established that Sims failed to mitigate his damages.

Therefore, the trial court properly denied Bitter Creek's traditional motion for summary judgment on its affirmative defense of failure to mitigate.

Because Bitter Creek did not challenge the trial court's grant of summary judgment on the affirmative defense of waiver, we affirm the trial court's judgment as to that defense. We overrule Bitter Creek's second issue to the extent that it challenges the trial court's denial of Bitter Creek's motion for traditional summary judgment on its affirmative defenses of repudiation and failure to mitigate. We sustain Bitter Creek's second issue to the extent that it challenges the trial court's grant of summary judgment in favor of Sims on Bitter Creek's affirmative defenses of repudiation, material breach, impossibility of performance, and failure to mitigate.

*Attorney's Fees*

In its third issue, Bitter Creek challenges the award of attorney's fees to Sims. Sims sought to recover attorney's fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM. CODE ANN. §§ 38.001–.006 (West 2015). A person may recover attorney's fees on a breach of contract claim. *Id.* § 38.001(8). However, to recover attorney's fees under Section 38.001(8), the party must prevail on the breach of contract claim and recover damages. *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997).

Based on our disposition of Bitter Creek's first issue, Sims has not prevailed on his breach of contract claim at this point. A prevailing party is the party "who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not to the extent of its original contention." *Johns v. Ram-Forwarding, Inc.*, 29 S.W.3d 635, 637–38 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (quoting *City of Amarillo v. Glick*, 991 S.W.2d 14, 17 (Tex. App.—Amarillo 1997, pet. denied)); *see Robbins v. Capozzi*, 100 S.W.3d 18, 27 (Tex. App.—Tyler 2002, no pet.) ("A prevailing party is one who is vindicated by the trial court's judgment."). Therefore, we reverse the trial court's award of attorney's fees

16

to Sims and remand the issue to the trial court. *See Parkway Dental Assocs., P.A. v. Ho & Huang Props., L.P.*, 391 S.W.3d 596, 612 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (reversing and remanding award of attorney's fees because portion of summary judgment had been reversed on appeal and party was no longer the prevailing party). We sustain Bitter Creek's third issue.

*This Court's Ruling*

We affirm the trial court's judgment to the extent that it granted summary judgment on Bitter Creek's affirmative defense of waiver. We reverse the trial court's judgment in all other respects and remand this cause to the trial court for further proceedings.

JOHN M. BAILEY
CHIEF JUSTICE

June 28, 2019

Panel consists of: Bailey, C.J.,
Willson, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.